```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,     )    CRIMINAL NO.
                              )    03-10140-RWZ
     v.                       )
                              )
JOHN PIZZARELLA,              )
          Defendant.          )
```

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, submits this sentencing memorandum in support of its position at sentencing of the above-referenced defendant, John Pizzarella ("Pizzarella").

STATEMENT OF THE CASE

1.  Introduction

On July 7, 2005, Pizzarella pled guilty to three counts of a four count indictment against him. Specifically, he entered a guilty plea to Counts Two, which charged from December, 2002 through April, 2003, Pizzarella and his co-defendant, Jack Walsh Calvin ("Calvin") conspired to possess, with intent to distribute, over 100 kilograms of marijuana, and Count Three, which charged substantive count of possession with intent to distribute marijuana. He also pled guilty to Count Four which charged him, alone, with possession, with intent to distribute, an additional quantity of marijuana. Pursuant to 21 U.S.C., Section 841(b)(1)(B), a five year minimum mandatory sentence is applicable to Counts Two and Three.

Count One of the Second Superseding Indictment charged Pizzarella, Calvin and a third co-defendant, Vincent Meucci, with conspiracy to possess, with intent to distribute marijuana from in or about August, 1999, through December, 2002. Pursuant to 21 U.S.C. 841(b)(1)(A), a ten year minimum mandatory sentence is applicable to Count One.

2.   Facts Giving Rise to Counts Two, Three and Four

Beginning sometime in September, 2002, Calvin contacted an associate of his ("CS-1") by telephone. During this and subsequent telephone calls, Calvin told CS-1 that he (Calvin) wanted to contact "John," meaning Pizzarella, so that Calvin could re-establish his marijuana business with him. (PSR ¶¶ 32-35). At the time, CS-1 was cooperating with law enforcement, and this, and other telephone conversations with Calvin and Pizzarella were recorded.

From January, 2003, through March, 2003, Calvin had numerous telephone conversations with CS-1 regarding the impending shipment of marijuana to Pizzarella. (PSR ¶ 36). By April, 2003, plans were in place, and Calvin and CS-1 arranged to meet in Kentucky in order to transfer the marijuana from Calvin to CS-1. (PSR ¶ 37). Calvin, met with CS-1 in Kentucky, and transferred approximately 1,298 pounds of marijuana from Calvin's vehicle to that being driven by CS-1. (PSR ¶ 37). Calvin directed CS-1 to drive the marijuana to Massachusetts, and gave

CS-1 a contact number for Pizzarella for when CS-1 arrived there. Id.

During the drive from Kentucky to Massachusetts, CS-1 had numerous telephone conversations with Calvin, and as CS-1 approached the Boston-area, CS-1 also had numerous conversations with Pizzarella. PSR ¶ 38. At all times, during the trip, CS-1 was acting under the direction of law enforcement. PSR ¶ 38.

CS-1 met up with Pizzarella when CS-1 arrived in Saugus, MA. PSR ¶ 39. Pizzarella drove CS-1 to a garage where the two began to unload the marijuana from CS-1's truck to the garage. PSR ¶¶ 39-40. As they were unloading, Pizzarella and CS-1 spoke about Calvin and about the past shipment of marijuana CS-1 had delivered to Pizzarella. PSR ¶ 40. They were then interrupted by law enforcement and arrests were made. PSR ¶ 42. After the arrest, law enforcement searched the garage, and found an additional amount of 297 pounds of marijuana and packaging materials. PSR ¶ 42. In addition, law enforcement searched Pizzarella's residence at 6 Applewood Road, Saugus, MA, and found another two pounds of marijuana, packaged for resale, additional packaging materials and a scale. PSR ¶ 43.

3.  Facts Relating to Count One/Relevant Conduct[1]

---

[1] For purposes of sentencing, the government relies upon the sworn statements of CS-1 and CS-2, copies of which have been submitted under separate cover and under seal, to prove relevant conduct. The government also notes that the relevant conduct forms the factual basis of Count One of the Second Superseding

As mentioned above, CS-1 had previously delivered marijuana on behalf of Calvin to Pizzarella. CS-1 had been a marijuana customer of Calvin's, PSR ¶ 25, and purchased amounts ranging from 60 to 250 pounds from him at any given time. Calvin arranged to have the marijuana delivered to CS-1, as CS-1 resided in Virginia and Calvin resided in Houston, TX. PSR ¶ 26. In fact, CS-1 received shipments of marijuana from Calvin that were delivered by another associate of Calvin's, referred to herein as CS-2.

To pay for the marijuana, CS-1 delivered cash to Calvin. In June or July, 2000, CS-1 met with Pizzarella in Richmond, VA. PSR ¶ 27. Pizzarella gave CS-1 a gym bag that was stuffed with approximately $500,000 to $1,000,000 drug proceeds. PSR ¶ 27. Calvin told CS-1 to deliver the money to an associate of Calvin's in Atlanta, GA, which CS-1 did. PSR ¶ 27. On another occasion, Pizzarella and CS-1 met at a rest stop in the Ashland, VA, area, to exchange drug proceeds for ultimate delivery to Calvin. There was some confusion as to whom was to deliver the drug proceeds to Calvin, so Pizzarella called Calvin. At the end of the call, Pizzarella agreed to take CS-1's money, in the amount of $60,000 - $70,000, to deliver to Calvin. PSR ¶ 28.

In January, 2001, CS-1 agreed to deliver marijuana to

---

Indictment, which remains pending.

Pizzarella on behalf of Calvin.  PSR ¶ 29.  CS-1 met Calvin at the same location in Kentucky.  CS-1 picked up approximately 1,650 pounds of marijuana from Calvin, and delivered 1,440 pounds of it to Pizzarella, and co-defendant, Vincent Meucci.  PSR ¶ 29.

From 1999 through 2002, Calvin and his associates used another individual to transport marijuana to Calvin's customers, CS-2.  CS-2, along with associates of Calvin, smuggled large quantities of marijuana over the Mexican-United States border and transported it to the Houston, Texas, area.  Calvin maintained contact with the marijuana customers, and directed CS-2 to transfer portions of the marijuana to various individuals, including to Pizzarella in Massachusetts.  PSR ¶ 4.

CS-2 made numerous trips on behalf of Calvin for the purposes of transporting marijuana to Pizzarella, and for picking up drug proceeds from Pizzarella to deliver to Calvin and his associates.  PSR ¶ 8, 10, 11, 12, 14-19, 21.  Before delivering the marijuana to Pizzarella, CS-2 made various stops to deliver marijuana to Calvin's other customers along the eastern seaboard. In fact, on occasions, CS-2 delivered marijuana to CS-1 in Virginia before proceeding to Massachusetts.  At first, CS-2 carried smaller quantities to Pizzarella, i.e., 4-5 crates containing approximately 90-110 pounds of marijuana.  CS-2 made nine back-to-back trips to Pizzarella, seven for the purpose of delivering these smaller quantities of marijuana, and two for the

purpose of picking up the marijuana proceeds.  Later, CS-2 obtained a trailer, and was able to carry 11 crates to Pizzarella on each trip, each crate containing approximately 90-110 pounds. He made approximately 7 trips with the trailer for this purpose, one of which was a delivery to Pizzarella's home at 6 Applewood Drive, Saugus, MA.

CS-2 picked up drug proceeds from Pizzarella that were delivered to Calvin or Calvin's associate.  The first time CS-2 picked up approximately $100,000+ in drug money from Pizzarella. CS-2 delivered the cash directly to Calvin at Calvin's residence in Houston, TX.  Eventually, CS-2 delivered the drug money either directly to Calvin or to Calvin's associate, on the understanding that Calvin and the associate were partners and would split the proceeds.  CS-2 generally picked up approximately $200,000 in cash, with the largest amount being $1.2 million, and the lowest $90,000. PSR ¶ 23.

4.   The Presentence Report

Probation found that Pizzarella was responsible for a total of approximately 5,700 kilograms of marijuana, and had a base offense level of 34.  This amount included as relevant conduct the quantity of marijuana for which Pizzarella was responsible for under Count One.  Because the quantity of marijuana is between 3,000 and 10,000 kilograms of marijuana, Probation found that Pizzarella had a base offense level of 34, and, with the

three level deduction for acceptance of responsibility, a total offense level of 31.  Probation also determined that Pizzarella would qualify for a safety valve reduction, should the government determine he met the provisions of criterion 5.  If Pizzarella were safety valve eligible, his offense level would be reduced by another two levels, and he would be at a total offense level of 29.

At Criminal History Category I and at an adjusted offense level of 31, Pizzarella faces a guideline sentence of 108-135 months, a fine of $15,000 to $2,000,000 (on each count), supervised release of 4 years, and a $300 special assessment. With the safety valve, Pizzarella faces a guideline sentence of 87-108 months, a fine of $15,000 to $2,000,000 (on each count), supervised release of 3 years, and a special assessment of $300.

5.   The Government's Position

The government agrees with Probation's calculations of drug weight, and that Pizzarella has a base offense level of 34, based upon his being responsible for over 5,000 kilograms of marijuana.

A.   Relevant Conduct

The government contends that in calculating Pizzarella's guideline range, the court should consider relevant conduct embodied in Count One of the Second Superseding Indictment.  If relevant conduct is considered, Pizzarella is responsible for approximately 5,000 kilograms of marijuana, and, under the

Guidelines, has a base offense level of 34.  In addition, because the amount of marijuana for which Pizzarella is responsible is over 1,000 kilograms, the ten year minimum mandatory provisions of 21 U.S.C. Section 841(b)(1)(A) are applicable.

The government is aware of the Court's concern, expressed at the sentencing of Pizzarella's co-defendant, Calvin, about including Count One relevant conduct in sentencing the defendant on Counts Two and Three.  In response, the government notes that such inclusion is permitted, even anticipated, by Section 1B1.3 of the Guidelines.  In United States v. Caceda, 990 F.2d 707 (2nd Cir. 1993), the district court included in its sentencing calculation quantities of cocaine that were the subject of a pending state prosecution.  In responding to the defendant's objection to this, the Second Circuit noted that it had previously concluded that "a sentencing court should not consider the outcome of possible subsequent prosecution." Id. at 709, *citing*, United States v, Kooncem 885 F.2d 720 (10th Cir. 1989).  The court, therefore, approved of the district court's actions.  The Fifth Circuit has ruled similarly.  See, United States v. Rosogie, 21 F.2d 632, 634 (5th Cir. 1994) (recognizing the propriety of including as relevant conduct previously charged acquitted conduct and agreeing that district court properly included criminal activity arising from a pending state proceeding).  See also, United States v. Garcia, 78 F.3d 1457

(10th Cir. 1996) (no objection to including as relevant conduct drug amounts from cases pending in federal district court); United States v. Bledsoe, 1995 WL 763053 (8th Cir. 1995)(pending state charge included as relevant conduct; neither double jeopardy or self-incrimination rights violated).

Assuming that even after sentencing on Counts Two, Three and Four, Pizzarella is found guilty on Count One, the government suggests that any concerns regarding double jeopardy and the like can be considered at sentencing on Count One.  As such, given that the law requires the court to consider relevant conduct in sentencing Pizzarella on the counts in which he pled guilty, the government urges the court to find that Pizzarella is responsible for over 3,000 and less than 10,0000 kilograms of marijuana and is sentenced accordingly.

The Safety Valve/Minimum Mandatory Sentence

If the Court finds that Pizzarella is responsible for over 1,000 kilograms of marijuana, then the 10-year minimum mandatory sentence provided for in 21 U.S.C. § 841(b)(1)(A) is applicable. See, United States v. Reyes-Echevarria, 345 F.3d 1, 7 (1st Cir. 2003), *citing*, United States v. Robinson, 241 F.3d 115, 121-22 (1st Cir. 2001); United States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001); Sepúlveda v. United States, 330 F.3d 55, 60 (1st Cir. 2003) (citing United States v. Robinson as "rejecting the argument that when facts found by the judge trigger or increase a

mandatory minimum sentence, an Apprendi violation occurs"); <u>United States v. Eirby</u>, 262 F.3d 31, 39 (1st Cir.2001) (stating that "the Apprendi doctrine offers no advantage to a defendant who is sentenced to a term less than the otherwise applicable statutory maximum).

Even so, Probation has determined that Pizzarella meets the first four requirements of the safety valve. If Pizzarella fully complies with the safety valve provisions, the minimum mandatory sentence is not applicable. In addition, he would be entitled to a two level reduction from his base offense level. To date, Pizzarella has not met the criterion 5 of the safety valve. If he did, it is the government's position that Pizzarella would have an adjusted offense level of 29 (base offense level of 34, less 3 for acceptance and 2 for safety valve).

## CONCLUSION

Based upon the foregoing, it is the government's position that Pizzarella has a base offense level of 34, less 3 for acceptance of responsibility.

If Pizzarella meets the safety valve provisions, an additional two levels is deducted, and the minimum mandatory sentence is not applicable. Pizzarella would therefore be at an adjusted offense level of 29 (87-108 months); a fine of between $15,000 and $6,000,000; a period of supervised release of 3 to 5 years; and a $300 special assessment.

If Pizzarella does not meet the safety valve provisions, then Pizzarella has a base offense level of 34, less 3 for acceptance, for an adjusted offense level of 31. Because of the ten year minimum mandatory, Pizzarella faces between 120-135 months imprisonment, a fine of between $15,000 and $4,000,000 and a period of supervised release of 3 to 5 years.

                                          MICHAEL J. SULLIVAN
                                          United States Attorney

                      By:   /s/ Susan M. Poswistilo
                            SUSAN M. POSWISTILO
                            Assistant U.S. Attorney